US Federal District Court
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

CIVIL ACTION AND DEMAND FOR TRIAL BY JURY

_____

| | |
|---|---|
| Kang Lu,<br>Plaintiff, | ) |
| | ) |
| Eric Lu, child,<br>Co-plaintiff | ) |
| | ) |
| vs. | ) Civil Docket# To Be Determined |
| | ) |
| Trooper Jonathan R. Spencer<br>Massachusetts State Police, | ) |
| | ) |
| Trooper Sean McClintock<br>Massachusetts State Police, | ) |
| | ) |
| Officer David E. Burns,<br>Town of Palmer Police, | ) |
| | ) |
| Sergeant North, first name unknown<br>Town of Palmer Police Department, | ) |
| | ) |
| Judge Philip Contant<br>Westfield District Court, | ) |
| | ) |
| Judge William O'Grady<br>Westfield District Court, | ) |
| | ) |
| Defendants,<br>each in his personal capacity. | ) |

LITTIGANT PARTIES


PLAINTIFFS:


001     KANG LU and child Co-plaintiff, ERIC LU, residing at: 5753 Highway 85 North, #2442, Crestview Florida, [32536]. E-mail: noduty2submit@gmail.com.


DEFENDANTS:


002     Mass. State Trooper Jonathan R. Spencer, in his personal capacity, last known location at the Massachusetts State Police Barracks, 90 Westfield Rd, Russell Massachusetts, 01071.

003     Mass. State Trooper Sean McClintock, in his personal capacity, last known location at the Massachusetts State Police Barracks, 90 Westfield Rd, Russell Massachusetts, 01071.

004     Officer David E. Burns, in his personal capacity, last known location at Palmer Police Department, 4417 Main St # 9, Palmer Massachusetts, 01069.

005     Sergeant North, first name unknown, in his personal capacity, last known location at Palmer Police Department, 4417 Main St # 9, Palmer Massachusetts, 01069.

006     Judge Philip Contant, in his personal capacity, last known location at the Westfield District Court, 224 Elm St, Westfield, Massachusetts, 01085.

007     Judge William O'Grady, in his personal capacity, last known location at the Westfield District Court, 224 Elm St, Westfield, Massachusetts, 01085.

# Table of Contents

Abstract....................................................(04)

Jurisdiction...............................................(04)

Factual Overview...........................................(05)

False Arrest...............................................(06)

False imprisonment.........................................(10)

Assault and battery........................................(12)

Negligent Infliction of Emotional Distress.................(13)

Malicious Prosecution......................................(16)

Deprivation of rights under color of Law...................(17)

MGL c90 § 21 and 25 unconstitutional.......................(22)

No Qualified Immunity......................................(25)

Trespass on the case.......................................(26)

No Judicial Immunity.......................................(29)

WHEREFORE..................................................(30)

Certification..............................................(30)

---

## ABSTRACT

008    NOW COMES Kang Lu, one of the People, appearing *sui juris* on his own behalf and on behalf of his child and co-plaintiff, Eric Lu, herein before this Honorable Court of Record. He brings this Civil Action and Demand for Trial by Jury against the afore listed defendant persons in the nature of Title 42 United States Code § 1983 for deprivation of rights under color of Law through trespass and trespass on the case. In addition, the Plaintiffs challenge portions of MGL c90 § 21 and 25 as unconstitutional and void for vagueness.

## JURISDICTION

009    Title 28 U.S. Code § 1343:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

FACTUAL OVERVIEW

010     Two separate but nearly identical incidents form the factual bases for trespass and deprivation of rights under color of Law. On 9/11/2014 and 4/12/2015, Kang Lu and his family were peaceably traveling, enjoying in "safety and tranquility their natural rights, and the blessings of life" when suddenly accosted by uniformed Massachusetts police officers who, when presented with the Plaintiff's invocation of rights and request for probable cause, proceeded to assault the Plaintiff, battering him in the process, leading to his false arrest and imprisonment. Additionally, in each case the officers' wanton and reckless conduct inflicted extreme and maximal emotional distress upon the child co-plaintiff. The video evidence is hereby entered into the Record by public posting at YouTube.com, showing in part, the trespasses, infringements and depravations of rights herein alleged:

011     20140911, Recording 1 through 4:
                https://www.youtube.com/watch?v=mRMmYGXChx0
                https://www.youtube.com/watch?v=2_1FbvIQ7cM
                https://www.youtube.com/watch?v=D6Rw-m3_fkk
                https://www.youtube.com/watch?v=uT1gQJTRulo

012     20150412, Recording 1 through 3:
                https://www.youtube.com/watch?v=2LMaU66ST8o
                https://www.youtube.com/watch?v=c_2qwxafG7Y
                https://www.youtube.com/watch?v=jWc66Lhb_Yk

013     Adding insult to injury, the judicial officers of the Westfield District Court continued the lawless trespass. The defendants moved against the Plaintiff with brazen disregard for the Law and the Constitution. While conspiring with the Prosecution and each other, the judicial officers willfully ignored multiple challenges to jurisdiction and unlawfully deprived the Plaintiff of his right "to be informed of the nature and cause of the accusation[s]." Under color of law, in the absence of jurisdiction, the continued deprivation of rights, the threat of imprisonment and constructive restraint on the Plaintiff's liberties lasted for many months, immeasurably impairing the normal conduct of his life and business.

FALSE ARREST


014     FALSE ARREST: "Any unlawful physical restraint by one of
another's liberty, whether in prison or elsewhere." (Black's Law
Dictionary). Having arrested the Plaintiff without warrant, without
probable cause and absent a breach of peace or immediate menace to
public safety, the defendant officers Jonathan R. Spencer, Sean
McClintock, David E. Burns and Sergeant North did each commit false
arrest.


Facts:

015     In both cases, the Plaintiff Kang Lu and his family were
peaceably traveling according their freewill, when suddenly and
violently assaulted and battered by uniformed officers. There was no
probable cause for a guilty act or crime, no injured party, no damage
to property, no disturbance of peace, no menace to public safety and
no activity or conduct injurious to the public health, safety, morals
or general welfare, which would constitute the lawful or reasonable
exercise of the Police Power to arrest.

016     In the two cases the officers either denied or failed to state
probable cause, and no probable cause existed. In both cases the
officers each identified the reason for arrest as an alleged
violation of Mass. General Laws Chapter 90 § 25, "Refusal to submit
to police officer." In both cases the Plaintiff clearly and expressly
invoked his right to silence. Not only did the defendant officers
deprive and ignore that right, but each also showed willful contempt
for the real Law by falsely arresting the Plaintiff despite his
explicitly warnings and citations of the relevant legal doctrines.


Video excerpts from 9/11/2014 (In logical order):

017     Defendant: "Do you have a license on you?"

018     Plaintiff: "What is your probable cause?"

019     Defendant: "I don't have probable cause, you need to provide a
license."

020     Plaintiff: "I have invoked my 5th amendment right, against
[self incrimination]...I invoked my right to remain silent."

021   Defendant: "You invoke all the rights you want but if I don't have a license to prove you can drive a motor vehicle legally in Massachusetts, I cannot allow you to drive."

022   Plaintiff: "I'm not driving in Massachusetts, I'm traveling of my own free will, pursuant to Shapiro v. Thompson."

023   Defendant: "Sir, I am going to ask you one more time, to give me your license and registration. If you do not submit to that order, I will place you under arrest."

024   Defendant: "If you can not provide who you are and where you were driving to, I will place you under arrest for failure to submit to a police officer."

025   Defendant: "I'm telling you one more time to give me your license. If you do not provide your license, I will place you under arrest. Do you understand that? That is the only thing you need to know right now."

026   Defendant: "Mr. Lu, as of right now you are being placed under arrest for failure to submit to a police officer. You have the right to remain silent, anything you say can and will be used against you in court..."

027   Defendant: "Sir, I placed you under arrest for failure to submit to an officer, three different orders, I gave you six or seven orders to give me your license and provide who you were with your license."

028   Plaintiff: "When I invoke my constitutional rights, that cannot be converted into a crime. That cannot be converted into a crime; you can't arrest me for exercising my constitutional rights [of silence]. Byars [should be Miller] verses the United States."

029   Plaintiff: "you are placing me under unlawful arrest. The exercise of a constitutional right [of silence] cannot be converted into a crime and what you're doing is against the United States Code 42-1983."


Video excerpts from 4/12/2015 (In logical order):

030   Plaintiff: "Am I free to go or are you detaining me sir?"

031   Defendant: "I'm detaining you. This is a motor vehicle stop. Do you have your license, registration, and insurance please?"

032   Defendant: "I would like your license, registration, and proof of insurance. Anytime you are stopped by the police, you are required to produce those, failure to do so will result in your arrest, OK? Do you have the documents with you?"

033   Plaintiff: "what if I invoke my right not to speak, I mean, I have that right. Because when you stop me, you are supposed to read me my rights, right?"

034   Defendant: "No. Step out [of] the car."

035   Plaintiff: "I'm not stepping out, because I am invoking my right to remain silent."

036   Defendant Burns: "You don't have a right to do that."

037   Plaintiff: "Yes I do."

038   Defendant: "No you do not. I need your license, registration, and insurance card otherwise you're getting arrested."

039   Plaintiff: "Sir, with all due respect, I have the right to remain silent..."

040   Defendant: "No, Mass General Laws Chapter 90 section 25 requires you to produce that upon demand. So, failure to produce those you're going to get arrested...OK, step out the car."

041   Plaintiff: "No Sir, I'm sorry, please what's your probable cause? ... I just want to know the probable cause sir. Do you have probable cause? State your probable cause sir. State your probable cause! Is there a crime, is there an injured party?"

042   Defendant: "There is: Mass General Laws 90-25, You are under arrest. Come back here with me!"


Law:

043   One of the most sacred principles of American jurisprudence holds that a defendant is innocent until proven guilty. This logically dictates that a warrantless arrest must be presumed false until proven otherwise; that is, the arresting officer has the burden of proof. Defendant officers Jonathan R. Spencer, Sean McClintock, David E. Burns and Sergeant North have the *onus probandi* to show that their arrests were done for good cause and in accordance with the Law. The defendant officers must show probable cause for a crime *mala in se*, a breach of peace or an immediate menace to public safety.

044    "The law watches personal liberty with vigilance and jealousy; and whoever imprisons another, in this country, must do it for lawful cause and in a legal manner." Justice Billings Learned Hand in <u>Pratt vs. Hill</u>, N.Y. 1853.

045    Massachusetts General Laws, Chapter 276 § 28 entitled "Arrest without warrant" provides statutory allowance for warrantless arrest in cases of theft, on probable cause for a misdemeanor related to domestic violence and for assault and battery. An arrest without warrant is also permitted where "the accused stands charged in another state with a crime punishable by death or by imprisonment for a term exceeding one year." (Mass. General Laws, Chapter 276 § 20B) None of these elements existed in the Plaintiff's unlawful arrests dated 9/11/2014 and 4/12/2015.

046    In <u>Corpus Juris Secundum</u>, Vol. 6A, under the subject of "Arrest or Detention Without Warrant" § 10, p. 17, it is written: "...except in cases where the public security has demanded it, arrest without a warrant is deemed to be unlawful."

047    <u>American Jurisprudence</u>, 2d., Vol. 5, under the subject of "Arrest," sections 26 and 28, pp. 716 and 718 States: "a peace officer cannot arrest without warrant for a misdemeanor, although committed in his presence, unless a breach of peace is involved ... the right to arrest for a misdemeanor committed in the presence of the officer is limited to those offenses which amount to a breach of the peace. The basis for the rule is that arrest without warrant is permitted, in cases less than felony not for the apprehension of the offender, but only for the immediate preservation of the public peace; and, accordingly, when the public peace is not menaced, a warrant is necessary."

048    Finally, the U.S. Supreme Court has ruled that a police officer can not arrest a citizen merely for refusing to present identification <u>Kolender v. Lawson</u> (461 U.S. 352, 1983) and also <u>Brown v. Texas</u> 443 U.S. 47 (1979): "Absent any basis for suspecting ... misconduct, the balance between the public interest in crime prevention and [the] right to personal security and privacy tilts in favor of freedom from police interference."


Conclusions of Facts and Law:

049    The reason stated for the warrantless arrests does not satisfy the lawful requirements of probable cause, breach of peace or immediate menace to public safety. It is also contradictory to the statutory allowance of Massachusetts General Laws, Chapter 276 § 28, which prescribes the conditions for "Arrest without warrant."

Therefore the arrests in question were unequivocally false, wrongful in nature, and caused deprivation of rights under color of Law.

050    The Court must find the Defendant officers Jonathan R. Spencer, Sean McClintock, David E. Burns and Sergeant North each responsible for the trespass of false arrest in both cases.


## FALSE IMPRISONMENT

Facts:

051    The Plaintiff has vehemently expressed from the very outset of each incident that he did not consent to the Defendants' threats, assaults and actual use of violence, and that any acquiescence or submission was performed under extreme duress to himself and his family. The imprisonment, in both cases were also against his will.


Video excerpt from 9/11/2014:

052    Plaintiff during the assault and battery: "Ok, you do what you got to do but I am telling you for the record: 'I am under duress. He has not shown me probable cause or reasonable suspicion; there is not a crime in process; there is no injured party; there is no damage to property. Ok, you're acting against my will and I have done nothing wrong, ok. You can do this all you wish, but I submit to you under duress, under duress.'"


Video excerpt from 4/12/2015:

053    Defendant during the assault and battery: "Step out the car! Step out the car! You are under arrest! Step out of the car! [officer grabs Plaintiff's left arm and violently pulls him out of car, at the same reaching for his gun.]"

054    Plaintiff pleads during the assault and battery: "Sir, Sir...under duress, under duress...alright!"

055    The Plaintiff was unlawfully imprisoned against his will from: approximately 1720 to 2230h on 9/11/2014 and approximately 1300 to 1630h on 4/12/2015.

Law:

056    False arrest is one means of committing false imprisonment;
that is, if the arrests in question were unlawful, then so too is the
detention that followed.

057    Black's Law Dictionary informs us: that "False imprisonment
consists in the unlawful detention of the person of another, for any
length of time, whereby he is deprived of his personal liberty. Mahan
v. Adam, 144 Md. 355, 124 A. 901, 904." The only essential elements
of the action are: (1) Detention or restraint against one's will; and
(2) The unlawfulness of such detention or restraint.

058    False imprisonment is one of the first trespasses recognized by
the Common Law, and a great offense due to the high regard the law
has for liberty. It has been labeled as a tort, a trespass, an
assault, a wrong, a damage, and an injury, giving one cause to bring
suit against another for a remedy. It was an indictable offense at
common law, and relief by the party aggrieved was obtained by an
action for trespass vi et armis. Meints v. Huntington, 276 Fed. 245,
249 (1921), citing: 3 Blackstone's Commentaries p. 127, 4
Blackstone's Commentaries p. 218.

059    Depriving a person of their liberty is legally no different
than depriving a person of their property - a theft of liberty is a
wrong by which remedy can be had, just as is the case with the theft
of property. Anyone who interferes with another's physical liberty
does so at his own peril. All who do so without lawful authority are
liable for the trespass upon liberty and loss of time.

060    Unlawful interference with or injuries to the liberty of man is
a violation of his natural, inherent and unalienable rights, from
which damage results as a legal consequence. Meints v. Huntington,
276 Fed. 245, 248 (1921). Anyone who assists or participates in an
unlawful arrest or imprisonment is equally liable for the damage
caused. Thus, where a man was unlawfully arrested by a police
officer, any officer on the scene lending assistance to the arresting
officer are equally liable for false imprisonment. Cook v. Hastings,
150 Mich. 289, 114 N.W. 71 (1907).


Conclusion of Facts and Law:

061    The Plaintiff did not consent to his imprisonment; the
warrantless and unlawful arrests are the means by which false
imprisonment were committed. Therefore the defendants have each
committed False Imprisonment, in a manner wrongful in nature,
violative of rights and causing deprivations under color of Law.

062   The Court must find the defendant officers Jonathan R. Spencer, Sean McClintock, David E. Burns and Sergeant North each responsible for the trespass of False Imprisonment.


## ASSAULT and BATTERY


063   Black's Law Dictionary defines ASSAULT as "An intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward person of another, under such circumstances as create well-founded fear of imminent peril, coupled with apparent present ability to execute attempt, if not prevented." Black's Law Dictionary further defines BATTERY as "Any unlawful beating, or other wrongful physical violence or constraint, inflicted on a human being without his consent."

064   False imprisonment generally includes assault and battery, and at the very least it always involves technical assault. Having unlawfully arrested the Plaintiff with the use of both threatened or actual violence, the Defendants brought the Plaintiff under duress and color of Law to the Police Jail, where he was subject to forced handcuffing, forced fingerprinting, forced photography, forced disrobement, forced confinement, integration without assistance of counsel, physical and mental deprivations, injuries and humiliation.

065   "An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right to use force in defending himself as he would in repelling any other assault and battery." State v. Robinson, 145 Me. 77, 72 Atl, 2nd. 260, 262 (1950)

066   The Court must find the defendant officers Jonathan R. Spencer, Sean McClintock, David E. Burns and Sergeant North each responsible for the trespass of assault and battery.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)

Facts:

067     The reckless assault and battery perpetrated during the Plaintiff's false arrests inflicted extreme terror in the child Co-Plaintiff. The unprovoked, unlawful, excessive, outrageous threats and actual use of violence were totally disproportionate to the Plaintiff's actions of peacefully and plaintively invoking his right of silence and asking for probable cause to justify the trespasses. The Defendants' negligent, reckless and callous conduct were in each case the proximate cause for the child Co-Plaintiff's acute and severe emotional distress, as well as the symptoms which followed shortly thereafter.

068     In the video evidence from both incidents, the child Co-Plaintiff is heard crying in extreme, sustained and maximal distress:

Video excerpts from 9/11/2014:

069   Child Co-plaintiff: "I'm getting so scared!"

070     Defendant Trooper Spencer: "I apologize, but your father is not doing what he is told to be done."

Video excerpt from 4/12/2015:

071   "Oh my God!...I think I'm having a heart attack!"

072     The child Co-plaintiff tearfully confided to his parents and medical professionals shortly after each incident, expressing symptoms of fear, anxiety and uncertainty; sorrowfully stating during one such interview from 9/12/2014 that he was scared that "people will come to get us." On 9/16/2014 the child Co-plaintiff awoke from sleep screaming "Go away!" in reference to the 9/11/2014 incident. During an interview and assessment conducted 4/13/2014 with parents and medical professionals, the child Co-plaintiff repeatedly stated: "I wont see you again," in reference to fears of his father being taken away.


Law:

073   The Court needs to look no further than the organic laws of the Republic for the Law of the case.

074     Declaration of Independence, 1776: "...Life, Liberty and the pursuit of Happiness. - That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed..."

076     Constitution for the United States of America, Amendment IV, 1791: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated..."

077     Constitution of the Commonwealth of Massachusetts, 1780: "Article V. All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them."

078     Constitution of the Commonwealth of Massachusetts, 1780: "Article VII. Government is instituted for the common good; for the protection, safety, prosperity and happiness of the people; and not for the profit, honor, or private interest of any one man, family, or class of men: Therefore the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity and happiness require it."

079     In addition to the above founding documents, the opening paragraph in the "STANDARDS OF CONDUCT, Mission Statement, Oaths of Office & Honor, Code of Ethics" as promulgated by several of the Police Departments in Massachusetts states:

080     "Police Officers are granted their authority by the Commonwealth in order to maintain an orderly society and to protect the rights of citizens to be free of harassment or unwanted intrusion into their lives. Thus the power granted the police is immense and requires adherence to the highest ethics of office and commitment to follow the principles of law. The Oath of Office and the Code of Ethics are basic standards setting forth the commitment of the Department, and each individual Officer, to maintain the highest level of professional conduct and ethics while serving as a...Police Officer." [Reference: http://www.truropolice.org/On%20Line%20Manuals/Oath%20of%20Office.pdf, MBTA Police General Order No. 2003-59 Standards of Conduct.]

Conclusions of Facts and Law:

081    From the Laws cited in the forgoing paragraphs, the Court shall take judicial cognizance that "Government is instituted for the common good; for the protection, safety, prosperity and happiness of the people;" that Massachusetts Police Officers are "to protect the rights" of the People, "to be free of harassment or unwanted intrusion into their lives;" and that "All power residing originally in the people, ... the several magistrates and officers of government ... are at all times accountable to them."

082    Officers of the Law are bound by their Oaths of Office to respect the rights of the People, and to exercise Police Powers within constitutional limits. "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it." Butz v. Economou, 438 U.S. 478 (1978) and United States v. Lee, at 106 U.S. 196 (1882).

083    The defendants having each acted without warrant, without probable cause, without an emergency, without a disturbance of peace and in the absence of imminent threat to public safety, did so in violation of their Oaths of Office and delegated authority. Acting ultra vires, the defendants' official malfeasance was the very "harassment or unwanted intrusion" from which they swore to protect the People from.

084    In each case, the defendants' negligent, reckless, extreme and outrageous actions are the direct and proximate cause for the acute and extreme distress inflicted upon the child Co-plaintiff. The child Co-plaintiff did in fact suffer extreme emotional distress from both incidents, either acutely or as a direct consequence thereof, as documented in the forgoing facts.

085    The Court must find the defendant officers Jonathan R. Spencer, Sean McClintock, David E. Burns and Sergeant North each responsible for the tort of Negligent Infliction of Emotional Distress (NIED) upon the child Co-plaintiff, and his father, the Plaintiff by association.

MALICIOUS PROSECUTION

Facts:

086    In each incident, on 9/11/2014 and 4/12/2015, the Defendants leveled the felony charge of "Carrying Dangerous Weapon, MGL Chapter 269 § 10B" against the Plaintiff. In addition, on 4/12/2015 Defendant Burns also charged the Plaintiff with the misdemeanor offenses of Disorderly Conduct MGL Chapter 272 § 53, and Resisting Arrest MGL Chapter 268 § 32B, all of which were subsequently dismissed.

087    In each incident, the peaceful, uneventful and lawful possession of a "Morakniv Companion Fixed Blade Outdoor Knife" with a single-edge 4-inch blade was arbitrarily, capriciously and maliciously converted into a felony, which carries up to a 1-1/2 year prison term and therefore an imminent threat to the Plaintiff's good reputation, standing in society and his ability to be gainfully employed in the support of himself and the child Co-plaintiff.

088    In each incident where the Plaintiff was prosecuted for "Carrying Dangerous Weapon," there was never any allegation of a guilt act, an injured party, a violation of rights or damage to property. Therefore the defendants' malicious pursuit of a felony charge could not have been initiated to effect justice.

089    In each incident, the malicious prosecution terminated favorably for the Plaintiff for a lack of probable cause and lack of evidence supported by either Law or statute.

090    As a result of these arbitrary, capricious, malicious and injurious charges, the Plaintiff suffered great mental strain and anguish of mind. In having to report the felony charges to his employers, professional organizations and regulatory agencies, brought unwarranted discredit, invidious publicity, professional disgrace, disrepute, volumes of unnecessary paperwork and many hours of wasted time.

Law:

091    Black's Law Dictionary states under MALICIOUS PROSECUTION: "One begun in malice without probable cause to believe the charges can be sustained. Eustace v. Dechter, 28 Cal. App. 2d 706, 83 P.2d 523, 525. Instituted with intention of injuring defendant and without probable cause, and which terminates in favor of the person prosecuted. For this injury an action on the case lies, called the "action of malicious prosecution." Hicks v. Brantley, 29 S.E. 459, 102 Ga. 264; Eggett v. Allen, 96 N.W. 803, 119 Wis. 625."

092    Black's Law Dictionary further states: "In the law of malicious prosecution, it means that the prosecution was instituted primarily because of a purpose other than that of bringing an offender to justice. <u>Brown v. Kisner</u>, 192 Miss. 746, 6 So. 2d 611, 617."

093
http://legal-dictionary.thefreedictionary.com/Malicious+Prosecution:
"An action for damages brought by one against whom a civil suit or criminal proceeding has been unsuccessfully commenced without Probable Cause and for a purpose other than that of bringing the alleged offender to justice."


Conclusions of Facts and Law:

094    Defendants Jonathan R Spencer and David E. Burns each instigated the prosecution in a criminal action against the Plaintiff. The prosecution terminated favorably for the accused. The defendants acted without probable cause to believe the charges can be sustained. The defendants did so for a purpose other than to effect justice, therefore acting with malice and intent to injure. This caused the Plaintiff unwarranted damage to his reputation and unnecessary loss of time on extra paperwork, defense and litigation. Defendants Jonathan R. Spencer and David E. Burns have therefore each trespassed against the Plaintiff causing deprivation of rights under color of law through the tort of malicious prosecution.

095    The Court must find the Defendants Jonathan R Spencer and David E. Burns each responsible for the tort of malicious prosecution.


DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
AND CHALLENGE OF MGL Chapter 90 § 25 AND § 21


Facts:

096    The reason cited by the Defendants for both false arrests was <u>Refusal to submit to police officer, MGL chapter 90 § 25</u>: "Any person who, while operating or in charge of a motor vehicle ... refuses, on demand ... to produce his license ... or ... registration ... shall be punished by a fine of one hundred dollars" and <u>Arrest without Warrant, MGL chapter 90 § 21</u>: "Any officer ... may arrest without a warrant any person ... if [he] violates the provisions of section twenty-five of chapter ninety..."

097    In each case, the Plaintiff and his family were exercising their inalienable right to freely and peaceably travel on the public way according to their own freewill. At no time was the Plaintiff paid to drive or operate a motor vehicle; nor did the Plaintiff engage in the regulable activity of transportation by acting as a carrier; no passengers were present and no property or cargo was being transported. Furthermore, in both cases, the plaintiff clearly and unambiguously refuted the presumption of "operating" or "driving" a "motor vehicle."

Video excerpts from 9/11/2014:

098    Plaintiff: "Sir, I have no contract with MASSACHUSETTS."

099    Defendant Spencer: "You're driving in Massachusetts."

100    Plaintiff: "I'm not driving in Massachusetts, I'm traveling of my own freewill, pursuant to Shapiro vs. Thomson."

101    Defendant Spencer: "Do you do this professionally? Do you give people a hard time trying to do their job professionally?"

102    Plaintiff: "No, Sir. I just want to live freely..."

103    Defendant Spencer: "I know you want to live freely but operating a motor vehicle is not a right. You are not operating a motor vehicle? That's not a car?"

104    Plaintiff: "I am not operating a motor vehicle sir. That's not a motor vehicle sir. Look up...Title 18 USC 31 - a motor vehicle. That [referring to my Honda Accord] is not a motor vehicle."

105    In each case, it became obvious that the Defendant officers were not interested in the driver's license per se, but were primarily intent on identifying of the Plaintiff and others in his party.

Video excerpts from 9/11/2014:

106    Defendant Spencer: "If you can not provide who you are and where you were driving to, I will place you under arrest for failure to submit to a police officer."

107    Defendant Spencer: "I am getting you out the car for failure to give me your license. If you don't provide who you are, I don't know if you belong in this car."

108   Defendant Spencer: "Sir, I placed you under arrest for failure to submit to an officer, three different orders, I gave you six or seven orders to give me your license and provide who you were with your license."


Video excerpts from 4/12/2015:

109   Defendant Officer: "I can't allow you to take control of the vehicle now that your husband is under arrest."

110   Plaintiff's significant other: "I haven't done anything wrong though."

111   Defendant Officer: "I don't know if you have a valid license therefore I cannot let you safely operate a motor vehicle, so unfortunately the car is going to have to be towed unless you can produce a valid ID."

112   Plaintiff's significant other: "No, I'll just pull right in there, park it right there, then somebody can come pick us up."

113   Defendant Officer: "No, No, absolutely not."

114   Plaintiff's significant other: "Why?"

115   Defendant Officer: "Because I don't know who you are."

116   Plaintiff's significant other: "You don't need to know who I am ... I'm just going to be able to drive the car."

117   Defendant Officer: "Do you have proper ID? No, no, no, no..."

118   In each case, the Plaintiff clearly and unequivocally invoked his natural and Constitutionally protected rights, including his right to silence and his right to be secure in his "persons... papers, and effects." In each incident the Defendants were informed that "The claim and exercise of a Constitutional right cannot be converted into a crime." Miller v. U.S. 230 F.2d 486 (5th Cir. 1956). And that any attempt to do so shall be meet with vehement action at Law. In each incident, the Defendants were completely undeterred and trespassed *vi et arms* causing deprivation of rights under color of Law through assault and battery, false arrest, false imprisonment and negligent infliction of emotional distress alleged herein.

Conclusions of Facts and Law:

119    In the case of MGL chapter 90 § 21 and § 25, several salient issues are presented to the Court: (i) Refusal to submit to police officer; (ii) refusal on demand to produce a license; (iii) deprivation of rights under color of statute and (iv) statutes are unconstitutional and void for vagueness. We shall address each as follows:


120    (i) Mass. General Laws chapter 90 § 25 is entitled <u>Refusal to submit to police officer</u>:

121    Above all, the Creator is the Master of his creation. We the People, having ordained and established the government and the several agencies thereof, shall NOT yield to the institutions established to serve us.

122    See <u>Constitution of the Commonwealth of Massachusetts</u>, Article V. "All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them."

123    For "When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but, in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts ... And the law is the definition and limitation of power ... For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life at the mere will of another seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." <u>Yick Wo v. Hopkins</u> 118 U.S. 356 (1886).

124    The Court is respectfully directed to take judicial cognizance that submission is the "essence of slavery itself," there is no duty to "submit" and We the People shall *never* "submit."

(ii) Refusal on demand to produce a license:

125    At the time of each incident, and in the records of each case that followed, the Plaintiff's point is clear: Having invoked his natural and Constitutionally protected right of silence, the statue MGL chapter 90 § 25, is powerless in compelling a reply, as it would require the violation of a protected right in order to exercise a contrived privilege.

126    "We find it intolerable that one constitutional right should have to be surrendered in order to assert another." Simmons v. United States, 390 U.S. 377 (1968).

127    Constitution for the United States of America, Amendment V: "No person ... shall be compelled in any criminal case to be a witness against himself..."

128    "Where rights secured by the Federal Constitution are involved, there can be no rule-making or legislation which would abrogate them." Miranda v. Arizona, 384 US 436 (1966).

129    "The claim and exercise of a Constitutional right cannot be converted into a crime." Miller v. U.S. 230 F.2d 486 (5th Cir. 1956).


(iii) Deprivation of rights under color of statute:

130    The Defendants' seizure and arrest of Plaintiff are subject to Fourth and Fifth Amendment constraints. The facts show that the Defendants were intent upon identifying the Plaintiff, even though no crime was committed or alleged; but the Law is absolutely clear in that the Plaintiff has a right to be silent and and cannot be arrested therefor.

131    "Stopping an automobile and detaining its occupants constitute a 'seizure' within meaning of the Fourth and Fourteenth Amendments, even though purpose of stop is limited and resulting detention is quite brief." Delaware v. Prouse, 440 U.S. 648 (1979).

132    "Application of Texas statute, which makes it a crime to refuse to identify one's self to a police officer who has lawfully stopped one and requested such information, to detain defendant and require him to identify himself violated the Fourth Amendment where officers lacked any reasonable suspicion to believe that defendant was engaged or had engaged in criminal conduct." Brown v. Texas, 443 US 47 (1979).

133     Police officers can not arrest for refusal to present
identification, see <u>Kolender v. Lawson</u>, 461 U.S. 352 (1983): "To the
extent that [California Statute] § 647(e) criminalizes a suspect's
failure to answer such questions put to him by police officers, Fifth
Amendment concerns are implicated. It is a 'settled principle that,
while the police have the right to request citizens to answer
voluntarily questions concerning unsolved crimes, they have no right
to compel them to answer. <u>Davis v. Mississippi</u>, 394 U.S. 721,
(1969)."

134     Having violated constitutional limitations in the exercise of
Police Power, the Court must find the defendant officers Jonathan R.
Spencer, Sean McClintock, David E. Burns and Sergeant North each
responsible for deprivation of rights under color of law.


(iv) MGL c90 § 21 and 25 unconstitutional and void for vagueness:

135     The criminalized violation under MGL c90 § 25 providing
statutory allowance for a warrantless arrest under MGL c90 § 21 in
the absence of probable cause, immediate menace to public safety or a
disturbance of the peace is unconstitutional as applied and on its
face, respectively.

MGL c90 § 25 is unconstitutional as applied and void for vagueness:

136     The falsehood lies not in the language of the statue itself,
but in its  application, MGL c90 § 25: "Any person who, while
operating or in charge of a motor vehicle ... refuses, on demand ...
to produce his license ... or ... registration ... shall be punished
by a fine of one hundred dollars" -- applies to drivers or operators
in charge of motor vehicles, not to People traveling.

137     That is, the People have an inalienable right to travel,
separate and distinct from the regulable activity of *transportation*
wherein motor vehicles are operated (see legal definitions below):
The United State Supreme Court "...long ago recognized that the
nature of our Federal Union and our constitutional concepts of
personal liberty unite to require that all citizens be free to travel
throughout the length and breadth of our land uninhibited by
statutes, rules, or regulations which unreasonably burden or restrict
this movement." <u>Shapiro v. Thompson</u>, 394 U.S. 618 (1969). And that,
as a primal right inherent to all free People, and as a liberty
guaranteed by the Constitution, the right to travel is in a preferred
position in the eyes of the Law.

138     Moreover, We the People do not surrender our Constitutionally
guaranteed rights simply by choosing to travel in a conveyance

powered by a motor. For "The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times and under all circumstances." Ex parte Milligan, 71 U.S. 4 Wall. 2 (1866).

139     Yet, in the cases presently before the Court, despite the Plaintiff clearly refuting the presumption of "driving" or "operating" a "motor vehicle," the jury may well conclude that the Defendants were either entirely unaware of the distinction, or that they were taught to ignore it. We hope and presume it to be the former.

140     In any judicial review of MGL c90 § 21 and 25, "Our Constitution is designed to maximize individual freedoms within a framework of ordered liberty. Statutory limitations on those freedoms are examined for substantive authority and content, as well as for definiteness or certainty of expression. See generally M. Bassiouni, Substantive Criminal Law 53 (1978).

141 As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Hoffman Estates v. Flipide, Hoffman Estates, Inc., supra; Smith v. Goquen, 415 U. S. 566 (1974); Grayned v. City of Rockford, 408 U. S. 104 (1972); Papachristou v. City of Jacksonville, 405 U. S. 156 (1972); Connally v. General Construction Co., 269 U. S. 385 (1926).

Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine -- the requirement that a legislature establish minimal guidelines to govern law enforcement." Smith, 415 U.S. at 415 U. S. 574. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Id. at 415 U. S. 575. Kolender v. Lawson, 461 U.S. 352 (1983).

142     Both ordinary people and the Defendant officers who have dedicated their efforts to Law enforcement are all too often unaware or misinformed of the distinction between the right to travel and the regulable activity of transportation. The simultaneous failure of the legislature to inform or establish minimal guidelines for law enforcement has invariably led to the arbitrary and inappropriate enforcement of MGL c90 § 21 and 25 against those to whom the statutes

are not applicable. As the video evidence shows, "There is nothing more fearful than ignorance in action." Johann Wolfgang von Goethe, 1749-1832.

143    This Court must find MGL c90 § 25 unconstitutional as applied and void for vagueness. For the same Laws cited in the section for False Arrest herein incorporated by reference as if in its entirety, the Court must also find that c90 § 21 authorizing a warrantless arrest based solely on a failure to produce license and registration under MGL c90 § 25 unconstitutional on its face.

144    The Court is respectfully directed to take judicial cognizance of the definitions used in the statute, and as discussed above:

145    MOTOR VEHICLE: Title 18 U.S. Code § 31(6): The term "motor vehicle" means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, passengers and property, or property or cargo.

146    TRANSPORTATION: Title 49 U.S. Code § 5102 - Definitions: (1,A) "commerce" means trade or transportation in the jurisdiction of the United States; (13) "transports" or "transportation" means the movement of property and loading, unloading, or storage incidental to the movement.

147    TRANSPORTATION (Black's Law Dictionary): The removal of goods or persons from one place to another, by a carrier.

148    CARRIER (Black's Law Dictionary): One undertaking to transport persons or property, or one employed in or engaged in the business of carrying goods for others for hire. Carriers are either common or private. Common carriers of passengers are those that undertake to carry all persons indifferently who may apply for passage, so long as there is room, and there is no legal excuse for refusal. Private carriers are those who transport or undertake to transport in a particular instance for hire or reward.

149    DRIVER (Bouvier's Law Dictionary): One employed in conducting a coach, carriage, wagon, or other vehicle, with horses, mules, or other animals.

150    DRIVER (Black's Law Dictionary): One employed in conducting or operating a coach, carriage, wagon, or other vehicle, with horses, mules, or other animals, or a bicycle, tricycle, or motor car, though not a street railroad car.

151    OPERATOR (Black's Law Dictionary): OPERATE. This word, when used with relation to automobiles, signifies a personal act in working the mechanism of the automobile; that is, the driver operates the automobile for the owner, but the owner does not operate the automobile unless he drives it himself.


## NO QUALIFIED IMMUNITY FOR DEFENDANT OFFICERS


152    "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335 (1986). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982). In other words, police officers are entitled to qualified immunity unless (1) the officers' conduct violates a federal statutory or constitutional right, and (2) the right was clearly established at the time of the conduct, such that (3) an objectively reasonable officer would have understood that the conduct violated that right. Knussman v. Maryland, 272 F.3d 625, 633 (4th Cir. 2001)

153    The Plaintiff's right to liberty and to remain unmolested, the safety of his child and family, the security of his persons, papers and effects were violated; those rights are inherent, established and always in force; any objective officer would be reasonably expected to respect and protect those rights -- but instead, the defendants did each willfully violate them.

154    "Qualified immunity protects law enforcement officers from bad guesses in gray areas." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998). Here, there were no "gray areas." The Plaintiffs and family were peaceably traveling. There was no guilty act on the Plaintiff's behalf to justify the deprivation of rights, the false arrests, assault and battery which occurred during each incident.

155    Video evidence clearly shows the Plaintiff posed no threat, but merely attempted to invoke and exercise his inalienable rights of silence and against warrantless search and seizure. Defendant officers Spencer, McClintock, Burns and North were by no stretch of any argument confronted with a "gray area," and since the defendants' warrantless arrests were made without any probable cause or articulable reasonable suspicion what-so-ever, they did so without authority of Law, under their own liability and at their own peril.

156     "...since Ex parte Young, 209 U. S. 123 (1908), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. Ex parte Young teaches that, when a state officer acts under a state law in a manner violative of the Federal Constitution, he 'comes into conflict with the superior authority of that Constitution, and he is, in that case, stripped of his official or representative character, and is subjected *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" Scheuer v. Rhodes, 416 U.S. 232 (1974).

157     The Court must deny any affirmative defense of Qualified Immunity asserted by the defendant law enforcement officers.


### TRESPASS ON THE CASE

Facts:

158     The Plaintiff's false arrest on 9/11/2014, lead to his arraignment before the Westfield District Court on the following day (Criminal Docket# 1444CR0001327). He verbalized a challenge to the court's jurisdiction during the special appearance at that time. Then on multiple subsequent written motions and at least four motions hearings and a bench trial, persons of the Westfield District Court were repeatedly commanded to reveal their legal intent by stating a cause of action and proving its jurisdiction on and for the record.

159     In each case the Court and its officers failed to do so. Finally, A suit was initiated in the Hampden Superior Court (Civil Docket# HDCV2014-00837-B) in order to compel persons of the Westfield District Court to state a cause of action and prove jurisdiction on the record. Despite this pressure the defendants remained silent.

160     On April 8, 2015, a hearing was held at 2 p.m. in Room # 4 of the Hampden County Superior Court, the Honorable Edward McDonough Jr. presiding.

161     The Plaintiff arrived to propound his arguments, to wit: "I bring the defendants Judges Contant and O'Grady before this Court of Record to ascertain by what jurisdiction or lawful authority did they enforce my compliance."

162     The Defendants and counsel dishonored the court by their absence. Having enjoyed approximately eight months, an arraignment

hearing, five motions hearings, a bench trial and the proceedings of a superior court, the defendants Judge Philip Contant and William O'Grady showed nothing less than the most determined unwillingness or total inability to state for the record the jurisdiction under which COMMONWEALTH v. KANG LU, 1444-CR-0001327 was tried in the Westfield District Court; and, by willfully neglecting this most fundamental of all ministerial duties they irrecoverably abandoned their posts as officers of the court, relinquishing all powers, privileges and immunities thereby.

163   In the months of litigation following his arrest, the Plaintiff was effectively constrained in the travels and pursuits of his normal life. For he was summoned and detained from time to time by persons of the Westfield District Court to appear under duress and without jurisdiction. Only when the Plaintiff had irrefutably proven that the trespasses were made without jurisdiction, did he allow the Superior Court claim to expire.


Law:

164   Jurisdiction is fundamental to lawful process and must be entered into the record:

165   Constitution for the United States, Amendment VI: "In all criminal prosecutions, the accused shall...be informed of the nature and cause of the accusation..."

166   Constitution of Massachusetts, Article XII: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him..."

167   Federal Rules of Civil Procedure 12(h)(3): "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

168   Rhode Island v. Massachusetts, 37 U.S. 657 (1838): "Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit -- to adjudicate or exercise any judicial power over them ... when the objection goes to the power of the court over the parties or the subject matter, the defendant need not, for he cannot give the plaintiff a better writ, or bill... ...[the Court's] action must be confined to the particular cases, controversies, and parties over which the Constitution and laws have authorized it to act; any proceeding without the limits prescribed is coram non judice, and its action a nullity. And whether the want or excess of power is objected by a party or is apparent to the Court, it must surcease its action or proceed extrajudicially.

Conclusions of Facts and Law:

i.  No Jurisdiction

169   The defendants, Judge Philip Contant and Judge William O'Grady were provided multiple opportunities and repeatedly admonished to command the Prosecution to provide a valid cause of action and to prove the Jurisdiction asserted on and for the record. These persons repeatedly and willfully failed to perform this basic and fundamental ministerial duty, denying the Plaintiff his right of due process thereby.

170   Instead of following the Law and dismissing the case for want of jurisdiction, each person chose to proceed and ultimately conclude the case in the absence of jurisdiction on and for the record. Their obstinate silence, even under duress of claim in the Superior Court is *prima facie* evidence of fraud and of a non-existent or fraudulent jurisdiction. "Silence can only be equated with fraud when there is a legal and moral duty to speak... We cannot condone this shocking conduct... This sort of deception will not be tolerated and if this is routine it should be corrected immediately." United States v. Tweel, 550 F.2d 297 (5th Cir. 1977).

171   This Court must find that the Defendants Judge Philip Contant and Judge William O'Grady acted without jurisdiction against the Plaintiff in the Westfield District Court.

ii. Trespass on the Case

172   By dishonoring the lawful request for jurisdiction, the Defendants have executed a nullity, violated the Plaintiff's right to due process and are thereby deemed trespassers.

173   "Where a court ... acts without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." Elliott v. Lessee of Piersol, 26 U.S. 328 (1828).

iii. Violation of Oath and Treason to the Constitution

174   Massachusetts officers of the Judicial Courts are bound by Oath to support the Constitution for the United States and of the Commonwealth under both Title 28 U.S. Code § 453 and M.G.L. c 221 § 38. The defendants, Judge Philip Contant and Judge William O'Grady are on record for total disregard and contempt of the Constitution by

assuming or asserting jurisdiction where none exists, repeatedly denying motions to reveal jurisdiction and moving forward in the cause without jurisdiction or under a fraudulent jurisdiction, in direct violation of the due process clause of Amendments V, VI and XIV of the Constitution for the United States, and Article XII of the Constitution of Massachusetts.

175    In <u>Cohens v. Virginia</u>, 19 U.S. 264 (1821), John Marshall, fourth Chief Justice of the United States held that when a judge acts where he does not have jurisdiction, the judge is engaged in an act of treason: "We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the constitution." This idea has been further and more recently upheld in <u>United States vs. Will</u>, 449 U.S. 200 (1980).

176    Punishment for Treason is prescribed by Title 18 U.S. Code § 2381: "Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States."


NO JUDICIAL IMMUNITY

177    Having concluded the case in clear absence of jurisdiction, the defendants Judge Philip Contant and Judge William O'Grady acted *ultra vires*; therefore, not only must judicial immunity be denied, but it must be considered wholly inapplicable to these persons.

178    "When a judge acts in the clear absence of all jurisdiction, i.e., of authority to act officially over the subject-matter in hand, the proceeding is *coram non judice*. In such a case the judge has lost his judicial function, has become a mere private person, and is liable as a trespasser for the damages resulting from his unauthorized acts. Such has been the law from the days of the case of <u>The Marshalsea</u>, 10 Coke 68. It was recognized as such in <u>Bradley v. Fisher</u>, 80 U.S. 335 (1871). In <u>State ex rel. Egan v. Wolever</u>, 127 Ind. 306, 26 N.E. 762, 763, the court said: 'The converse statement of it is also ancient. Where there is no jurisdiction at all there is no judge; the proceeding is as nothing.'" <u>Manning v. Ketcham</u>, 6th Circuit Court of Appeals, 58 F. 2d 948 (1932).

179    The Court must deny any affirmative defense of Judicial Immunity asserted by the defendant persons.

WHEREFORE,


180   the Plaintiff prays that the Court grants declaratory judgment that the Defendants: Officers Jonathan R. Spencer, Sean McClintock, David E. Burns and Sergeant North each responsible for the deprivation rights under color of law as mentioned in Title 42 United States Code § 1983 through the trespasses of false arrest, assault and battery, false imprisonment, Negligent Infliction of Emotional Distress (NIED) and malicious prosecution.

181   the Plaintiff prays that the Court grants declaratory judgment that the Defendants: Judge Philip Contant and Judge William O'Grady each responsible for the deprivation rights under color of law as mentioned in Title 42 United States Code § 1983 through the acts of trespass on the case;

182   the Plaintiff prays for relief and judgment against Defendants, both jointly and severally, on all causes of action for lost earnings, travel expenses, court fees, legal costs and general damages in the sum of 500,000.00 (five hundred thousand) dollars, money of account of the United States;

183   the Plaintiff prays that the Court grants declaratory judgment that portions of MGL c90 § 25 are unconstitutional as applied and void for vagueness;

184   the Plaintiff prays that the Court grants declaratory judgment that portions of MGL c90 § 21 authorizing warrantless arrests based solely on the failure to produce license and registration unconstitutional on its face and enjoins its enforcement by police officers.

185   The Plaintiff demands trial by jury.


CERTIFICATION

186   I, Kang Lu, presenting myself *sui juris* declare under penalty of perjury that the foregoing facts are true, complete and to the best of my knowledge. Signed and sealed without prejudice of rights:

_Kang Lu_ 11SEP2015

5753 HWY 85 N. #2442

Crestview Florida

noduty2submit@gmail.com